PEOPLE *v.* GEORGE.

NUISANCE — CRIMINAL LIABILITY — ORDINANCES — LANDLORD AND TENANT.

> In a prosecution of the owner of a leased building for failure to comply with a city ordinance requiring the owner or occupant of a building to inclose the elevator shaft with fireproof material, where the nuisance complained of was created in the construction of the building and must have existed at the time the lease was made, and a clause in the lease expressly reserved the right to the owner to enter for the purposes of making repairs, improvements, etc., his contention that his conviction should be set aside for the reason that the complaint should have been made against the lessee, cannot be sustained.

Certiorari to recorder's court of Detroit; Wilkins (Charles T.), J. Submitted October 5, 1921. (Docket No. 22.) Decided December 21, 1921.

Edwin S. George was convicted of violating an ordinance of the city of Detroit, and sentenced to pay a fine of $100 or imprisonment for 30 days in the Detroit house of correction. Affirmed.

*Paul Oren* (*Harold A. Sleeper,* of counsel), for appellant.

*Clarence E. Wilcox,* Corporation Counsel, and *James H. Lee,* Assistant Corporation Counsel, for the people.

STONE, J. A writ of certiorari was allowed in this case to review the conviction, in the recorder's court for the city of Detroit, of the defendant for the alleged violation of an ordinance of that city. The defendant was the owner of a building situated at 378 Woodward

avenue. On April 25, 1919, an inspector of the department of safety engineering of the city filed a complaint in the recorder's court alleging that—

"on the 14th day of April, 1919, within the corporate limits, of said city on 378 Woodward avenue * * * Edwin S. George * * * did then and there unlawfully and wilfully not fireproof an elevator shaft * * * contrary to the ordinances of said city, in such case made and provided, section 22, chapter 61, page 211 of the Compiled Ordinances of the city of Detroit for the year 1912."

That section reads as follows:

"Freight Elevator Shafts. How Enclosed.
"Freight elevators in all buildings of classes 1, 2, 4 and 5, shall have the shaft enclosure made of fireproof material not less than four inches thick, and have standard fire doors, except as described in section 23 of this article. (Approved July 2, 1912.)"

Section 4, chapter 61, reads as follows:

"Inspection. It shall be the duty of the department of buildings to cause a careful inspection to be made of all power driven elevators and of all hand hoists within the city of Detroit, at least once a year, to determine whether said elevators or hand hoists are maintained in a perfectly safe condition and in accordance with the provisions of this and other ordinances relating thereto. All elevators used for passenger service shall be similarly inspected once every six months."

Section 8, chapter 61, is as follows:

"If upon the inspection of any power driven elevator or hand hoist, it should be found in an unsafe or dangerous condition, the department shall thereupon serve a written notice of its finding upon the owner or occupant of the building. After the service of such notice and after a hearing, if one is desired, it shall be the duty of the owner or occupant to proceed at once to make such repairs or changes necessary to put said elevator or hoist in a safe condition, and it shall be unlawful to operate such elevator or hoist

until such repairs and changes have been made, and the elevator or hoist accepted by the department of buildings."

The premises in question consisted of a three-story building used for commercial purposes, and it appeared in evidence that the elevator shaft in said building was not made of fireproof material four inches thick as required by said section 22 of the ordinance. It further appeared that said building was occupied by the firm of Davis & Nahikian, a copartnership engaged in selling rugs, at the time of the commission of the alleged offense; that said building had been so occupied since 1917, under the terms of a written lease from the defendant for a period from March 1, 1917, to February 28, 1920. The fourth clause of said lease was as follows:

"The lessee shall keep the said leased premises and every part thereof in repair during the said term, and shall comply with the terms of all statutes or city ordinances, and the directions of all proper public officers concerning the said leased premises and every part thereof; and at the expiration of the said term shall yield and deliver up the same in like condition as when taken, reasonable use and wear thereof and damage by fire and other elements excepted."

The seventh clause of the lease reads as follows:

"The lessee shall permit the lessor, his agents and employees to have access to and enter the said leased premises at all reasonable and necessary times for any purposes connected with the repair, improvement, care and management of the said leased premises and of the building in which the same are situated, or of the heating system installed therein, or for the purpose of exhibiting or releasing the same."

The ninth clause of the lease is as follows:

"The lessee shall not make any alterations whatsoever or any additions to the said leased premises, property, heating system, or any part thereof, without the consent in writing of the lessor."

The ordinance provides for a fine not exceeding $500, or fine and imprisonment in the Detroit house of correction not exceeding six months for any violation of, or failure to comply with the provisions thereof. The defendant herein was convicted of the said offense and fined $100, or in case of failure to pay that amount he was sentenced to serve 30 days in the Detroit house of correction.

Error is assigned in convicting and sentencing said defendant for the following reasons:

(1) That said defendant would have been a trespasser had he gone on said premises to fireproof said elevator shaft, as he had leased the said premises and had no right to enter therein; the said premises being under the absolute control and possession of the lessee.

(2) The said complaint should have been made against the occupant and lessee of said premises instead of against said owner;

(3) Or the said complaint should have been made jointly against the said lessee and the said lessor, Edwin S. George.

(4) That said conviction is unfair and is an undue hardship on the said defendant in that it compels him to make alterations that the lessee of said premises is under contractual obligations to make.

(5) That said ordinance is not valid in that it commands a violation of law, and impairs the obligation of a contract.

(6) That the intent of said ordinance is that the complaint should be made against the party in possession, and there was a failure to do so in this case.

It is the claim of the defendant and appellant in certiorari that this case is governed and controlled by the cases of *People* v. *Kent,* 151 Mich. 134 (14 Ann. Cas. 208), and *People* v. *Weber,* 214 Mich. 181. An examination of those cases will show that they were both for the violation of the same ordinance, which ordinance differed very materially from the one in the instant case. After the words "owner or occupant"

in the ordinance involved in those cases, occurred the words "or other person having the control or management of any grocery," etc., which language is not contained in the ordinance we are considering in the instant case.

In, the prevailing opinion in the *Weber Case* attention was called to the fact that the complaint there did not charge the defendant with having created a nuisance prior to his leasing of the premises. In the instant case the nuisance was created in the construction of the elevator, and, under the evidence, must have existed at the time the lease was made, and for some years prior thereto. The fault had to do with the construction of the building itself.

. In both the *Kent* and *Weber Cases* much stress was laid upon the fact that the defendant had no right to enter upon the premises and make repairs or improvements. In the *Kent Case* (which language was also quoted in the *Weber Case*) the following was said:

"The entire possession and control of these premises were in Sloman & Company, tenants. The owner, for such purpose, would have no more right to enter than a stranger. No ordinance can be held valid which commands a violation of law. *City of St. Louis* v. *Kaine*, 2 Mo. App. 66."

The fact that the owner of the premises would have been a trespasser had he attempted to enter the building and make the repairs was, we think, a controlling question in those cases. Here, by express provision of the written lease, the lessee gave permission to the lessor, his agents and employees, to have access to, and to enter the said leased premises at all reasonable and necessary times for any purpose connected with the repair, improvement, care and management of said leased premises and of the building in which the same are situated, or of the heating system installed therein, etc. And attention is also called to the pe-

culiar language in clause 9 in said lease, above quoted. The cases are readily distinguished.

In the instant case it cannot be said, as claimed in the first assignment of error, that defendant would have been a trespasser had he entered the said premises and fire-proofed the elevator shaft. He expressly reserved that right.

All of the other assignments of error hinge upon the correctness of the position taken by appellant in the first assignment. By the express provision of the ordinance in question the duty is cast upon the owner or occupant to proceed to make the repairs, or changes necessary to put the elevator in condition; and we think it cannot be said that the action could not be brought against the owner alone. This ordinance had been in existence for 7 years before the complaint was made, and for 3 years before the lease was executed. Defendant virtually contends here that the tenant, whose lease had but a few months to run, should, alone, fulfill the requirements of the ordinance and make these permanent improvements upon the elevator shaft. As we have already said, the fault complained of in this case grows out of an unlawful construction of the building.

The conviction and judgment of the court below are affirmed.

STEERE, C. J., and MOORE, WIEST, FELLOWS, CLARK, BIRD, and SHARPE, JJ., concurred.